JOSEPH P. RUSSONIELLO (CBN 44332)
United States Attorney

BRIAN J. STRETCH(CABN 163973)
Chief, Criminal Division

EUMI L. CHOI (WVBN 722)
Assistant United States Attorney

150 Almaden Boulevard
San Jose, California 95113
Telephone: (408) 535-5079
Facsimile: (408) 535-5066
Email: eumi.choi@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS CAGUIMBAL,<br><br>Defendant. | No. CR 07-00787 JW<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: August 25, 2008<br>Time: 1:30 p.m.<br>Court: Hon. James Ware |

The United States hereby submits its sentencing memorandum in the above-referenced case. The United States disagrees with the Probation Office that the total adjusted offense level is 10, but rather is level 12, as the parties agreed in the filed plea agreement. Given his Criminal History Category of I, the defendant falls within the range of 10 to 16 months in Zone C. The United States asks that, under U.S.S.G. § 5C1.1(d), the Court impose a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to § 5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. That is, the Government requests a prison term at

the low end of level 12 (5 months), and a term of supervised release under § 5C1.1(e) that includes one day of home detention for one day of imprisonment (5 months) under § 5C1.1(e)(3), which is a reasonable sentence under Section 3553(a). The government does not oppose self-surrender.

**A. <u>Factual Background</u>**

Mr. Caguimbal was a Postal Service employee at the Salinas Main Post Office in Salinas, California, during the time he committed the acts giving rise to the offenses to which he pleaded guilty. Specifically, on November 22, 2005, he knowingly filled out a Postal Form 3533, also known as an Application and Voucher for Refund of Postage, Fees and Services, in the name of another individual, who was an employee of a business called Coastal Mailing. He filled out the Postal Form 3533 for a refund in the amount of $1,000 for spoiled/unused printed customer meter postage, when, as he knew, this individual had not in fact requested any refund at all. He filled out the Postal Form 3533 in the name of said individual, and signed the name of said individual on the Postal Form 3533 with the intent to keeping the $1,000 for himself. Also on November 22, 2005, he then issued two postal money orders in the amount of $500 each in the name of CMI (meaning, Coastal Mailing). He cashed the two money orders and kept the $1,000 himself.

Further, while he was employed at the Salinas Main Post Office, during the time period November 23, 2005 to September 22, 2006, he similarly filled out other Postal Form 3533s for fraudulent postal refunds in the names of other individuals and entities, and issued additional Postal money orders in their names and others as refunds, even though these individuals and entities had not in fact sought Postal refunds. He cashed these money orders and kept the cash myself. He also sometimes inflated the amount of legitimate refund requests submitted by Postal customers, and kept the difference in the amount of the legitimate, requested refunds and the inflated amounts. Sometimes, he simply fraudulently issued Postal money orders in the names of others or myself, and converted them to his personal use – for example, he cashed them. In these

//

ways, he took Postal monies in the amount of $67,633, in addition to the $1,000 in postal monies specified in the above paragraph, for himself.

Mr. Caguimbal pleaded guilty on March 27, 2008 to the three counts in the indictment: two counts of fraudulent issuance of postal money orders under 18 U.S.C. §500, and one count of making a false statement, under 18 U.S.C. §1001(a)(3). Thus far, Mr. Caguimbal has paid $799.86 to the Postal Service as restitution.

**B. The Guidelines Range in the Plea Agreement Should be Applied.**

In the plea agreement, the government and defendant agreed that a two level enhancement applied for Abuse of Position of Trust, under U.S.S.G. §3B1.3, thus making Mr. Caguimbal's applicable adjusted guidelines range level 12 (Zone C). The probation officer disagrees, thus finding that his applicable adjusted guidelines range level is 10 (Zone B), and recommending an entire sentence of probation.

The courts in this circuit and others have determined that employees who are not high-ranking can nevertheless be in a position of trust in committing the charged offense. As the court in U.S. v. Ferrin, 994 F.2d 658 (9th Cir. 1993) stated, a person is determined to be in a position of trust by "'the extent to which the position provides the freedom to commit a difficult-to-detect wrong.'" Id., citing U.S. v. Hill, 915 F.2d 502 (9th Cir. 1990) (driver of moving truck who stole his customer's belongings merited abuse of trust enhancement). The Ferrin court explained that there are two factors to consider in determining the applicability of this enhancement: "the inability of the trustor objectively and expediently to determine the trustee's honesty, and the ease with which the trustee's activities can be observed." Id. In Ferrin, where the defendant was a supervisor of seven hazardous waste handlers who was convicted of the illegal disposal of hazardous waste, the court found that the abuse of trust enhancement was not precluded because his position was not high-ranking.

Similarly, this circuit has applied the abuse of trust enhancement to a mail carrier who had stolen mail, U.S. v. Ajiboye, 961 F.2d 892, 895 (9th Cir. 1992). See also U.S. v. Hoskins, 282 F.3d 772 (9th Cir. 2002) (finding that a store security guard subject to supervision and "virtually

no discretion in the exercise of his duties" – i.e., he mainly monitored video surveillance of the store and called 911 upon signs of suspicious activity – did not merit the abuse of trust enhancement, but also recognized that there is no low-level employee exception to the enhancement).

In this case, Mr. Caguimbal and another postal employee rotated as being the "Clerk in Charge" at the postal office where he converted postal money orders to his personal use. It was during this time that he stole the money orders which are issue in this case. As a postal employee (in essence, a supervisory window clerk, but even if he was simply a window clerk), Mr. Caguimbal's position facilitated his commission of the crimes at issue because he had ready access to the requisite postal forms and monies; moreover, he had the specific knowledge necessary to commit the offenses. That is, as in the above cases, his honesty could not be objectively and expediently determined by his supervisors, who did not often conduct supervisory review of his accounting procedures, and his activities could not be readily observed; thus he was able to commit these offenses. As the cited cases make clear, it is not necessary that Mr. Caguimbal occupied a "high level of professional or managerial discretion,"or be a manager at all, see Pre-sentence Report Addendum at ¶ 2, although at times relevant to the plea agreement he was in essence a manager.[1] Nor is there a requirement that he have stolen U.S. mail, as suggested in the pre-sentence report, id. Ajiboye, supra, 961 F.2d 892, merely illustrates the applicability of the abuse of trust enhancement where a postal worker stole mail because his position facilitated the crime. Likewise, here, Mr. Caguimbal's position facilitated his crime. The abuse of trust enhancement therefore applies.

**C. The Court Should Impose A Sentence of 5 Months Incarceration and 5 Months Home Detention, Which is a Reasonable Sentence After Considering the Factors Under Section 3553(a).**

In the present case, the United States asks that the Court sentence defendant Caguimbal to a

---

[1] Indeed, in the Hill case, supra,. 915 F.2d 502, the court applied the abuse of trust enhancement to a driver of a moving company truck who stole the customer's belongings which were being moved.

custodial term of 5 months, and home confinement for 5 months, reflecting a Guidelines range sentence and which is a reasonable sentence after considering the factors set forth in 18 U.S.C. § 3553(a).

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court instructed that a sentencing court should take the Guidelines into account and also fashion a reasonable sentence reflecting the seriousness of the offense, promote respect for the law, provide for just punishment, provide adequate deterrence, and protect the public under 18 U.S.C. § 3553(a). Booker, 125 S. Ct. at 765. The Guidelines are advisory now, Booker, id.; Rita v. United States, 127 S. Ct. 2456 (2007). The Supreme Court has held that when a district court applies a sentence within a properly calculated Guidelines range, the courts of appeals may apply a presumption of reasonableness to that sentence. Rita, id. at 2465. But the district court cannot presume the Guidelines range is reasonable, and "must make an individualized assessment based on the facts presented" in sentencing a defendant, Gall v. United States, 2007 WL 4292116 (Dec. 10, 2007). To impose a non-Guidelines sentence, the district court must ensure that the justification supports the variance. Id. At 7. Appellate courts are to review sentences for reasonableness under an abuse of discretion standard. Kimbrough v. United States, 2007 WL 4292116 (Dec. 10, 2007)(sentencing judge need not accept the policy judgments implicit in a Guidelines provision).

In the present case, the sentence requested by the United States falls within the properly calculated Guidelines Range. Therefore, if this Court determines to impose the sentence, the Ninth Circuit may presume that this sentence is reasonable. Moreover, the sentence is indeed reasonable after considering the factors under Section 3553(a).

Section 3553(a), entitled "Factors to be considered in imposing sentence," provides as follows:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed -

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for - (A) the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing] guidelines . . . that . . .are in effect on the date the defendant is sentenced;

(5) any pertinent policy statement - (A) issued by the Sentencing Commission . . . that . . . is effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Thus, under Section 3553(a), this Court shall impose a sentence that reflects (1) the nature and circumstances of the offense, and (2) the history and characteristics of the defendant; and the sentence should (3) reflect the seriousness of the offense, (4) promote respect for the law, provide for just punishment, (5) provide adequate deterrence, and (6) protect the public.

Over a sustained period of time, from approximately November 23, 2005 to September 22, 2006, as reflected in the plea agreement, defendant Caguimbal knowingly and intentionally took money from the postal service which he converted to his personal use in a variety of ways. He did not stop until he was detected by postal authorities. Further, in filling out the false refund forms in the names of other individuals, he knowingly made false statements.

Accordingly, in order to adequately reflect the seriousness of this crime, provide just punishment, to promote respect for the law, to protect the public, and to deter other potential offenders in the future, the Court should impose the requested sentence. This requested sentence

also recognizes that Mr. Caguimbal does not appear to pose a threat to the community, has no prior criminal record, has strong community and family ties, prior military service, and has accepted responsibility for his misdeeds.

**CONCLUSION**

For the foregoing reasons the United States requests that the Court impose a custodial sentence of 5 months and home detention for 5 months, which is a reasonable Guidelines sentence after considering the factors under Section 3553(a). The United States further requests that this sentence be followed by a two-year term of supervised release and a special assessment of $300, and restitution in the amount of $67,833.14 (which takes into account the restitution he has made to date).

DATED: August 18, 2008

JOSEPH P. RUSSONIELLO
United States Attorney

/s/
EUMI L. CHOI
Assistant United States Attorney